THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | | |
|---|---|---|---|
| LAURENCE JARVIK, | : | | |
| | : | | |
| Plaintiff, | : | Civil Action No.: | 06-1555 |
| | : | | |
| v. | : | Document Nos.: | 3, 4 |
| | : | | |
| CENTRAL INTELLIGENCE AGENCY, | : | | |
| | : | | |
| Defendant. | : | | |

## MEMORANDUM OPINION

### GRANTING THE DEFENDANT'S MOTION FOR SUMMARY JUDGMENT;
### DENYING THE PLAINTIFF'S CROSS-MOTION FOR SUMMARY JUDGMENT

### I.   INTRODUCTION

This matter comes before the court on the parties' cross-motions for summary judgment. The plaintiff brought suit against the CIA under the Freedom of Information Act ("FOIA") after the CIA denied his request for a fee waiver for a FOIA request he had submitted. Seeking information on events that transpired in Andijan, Uzbekistan between 2004-2006, the plaintiff contends that he is entitled to the fee waiver as a journalist and scholar disseminating information in the public interest regarding the activities of the U.S. government. The government argues that because the plaintiff stated, *inter alia*, that he plans to write a book, his motives are primarily commercial. This, the government claims, in conjunction with his failure to identify a nexus between government activities and the requested reports on foreign events, disqualifies him from receiving a fee waiver. Because the plaintiff did not show with reasonable specificity in the administrative record a nexus between federal government activities or operations and his request, the court upholds the CIA's denial of a waiver of fees. Accordingly, the court grants summary judgment to the defendant and denies summary judgment to the plaintiff.

## II.  BACKGROUND

On February 15, 2006, the plaintiff submitted a request to the defendant for "all CIA documents about events in Andijan, Uzbekistan from 2004-2006, including any CIA reports relating to the violence of May, 2005, and its aftermath, as well as subsequent trials and evacuation of refugees."  Pl.'s Opp'n and Cross-Mot. for Summ. J. ("Pl.'s Mot."), Ex. 1.  In this request, the plaintiff also asked for exemptions from any fees associated with finding and reproducing the information he requested, identifying himself as "a journalist writing for publication" who was working on a book on Central Asia and maintaining a personal blog.  *Id*.  On March 7, 2006, the plaintiff received a letter from the CIA that proposed narrowing the request to "CIA reports relating to the violence of May 2005 and its aftermath, as well as subsequent trials and evacuation of refugees."  *Id.*, Ex. 2.  The agency denied the plaintiff's fee waiver and placed his request in the commercial fee category, concluding that the "information is not likely to contribute significantly to public understanding of the operations and activities of the U.S. government."  *Id.*

In a reply letter dated March 22, 2006, the plaintiff accepted this limitation on the scope of his request but objected to the denial of a fee waiver.  Expanding on his first letter, the plaintiff argued that "[his] research is a scholarly as well as journalistic endeavor."  Pl.'s Mot., Ex. 3.  He identified his audience as "policy specialists" and members of the public "interested in the operations and activities of the U.S. government in the field of international relations."  *Id*.  He represented that he had published similar articles on U.S.-Uzbek relations in *Orbis: A Journal of World Affairs*, and anticipated publication of selections from his book in that or a similar policy magazine, as well as his personal blog and a website devoted to Central Asia affairs to

which he has contributed "for a number of years." *Id.* He indicated that his "writings on U.S. government operations and activities have appeared in *The Wall Street Journal*, *The New York Times* and *The Los Angeles Times*" and that he had appeared on ABC's *Nightline*, CNN's *Crossfire*, CSPAN's *Washington Journal* and numerous congressional committees. *Id.* He even claimed a film credit: a documentary on the plight of Jewish refugees from Nazi Germany entitled, "Who Shall Live and Who Shall Die?" *Id.*

The CIA issued a final response to the plaintiff on July 18, 2006, denying his fee waiver appeal. *Id.*, Ex. 4. The agency explained that it could only grant the waiver if the information requested was likely to contribute significantly to the public understanding of the operations or activities of the U.S. government *and* if the request was not in the primary commercial interest of the requester. *Id.* Because the plaintiff "neither alleged nor made any connection between U.S. government operations or activity and the violent events in Andijan, Uzbekistan," the defendant denied the appeal. *Id*. The agency added that a "general awareness on the part of the U.S. Government to events abroad" was insufficient to establish the statutorily required connection between the government and the information requested. *Id.* Regarding Jarvik's work specifically, the agency explained that because he was "writing a book, which, although scholarly is in [his] commercial interest . . . [he did] not meet the second criterion warranting a fee waiver." *Id.*

Following this final denial, the plaintiff filed suit in this court on September 1, 2006. The defendant responded with a motion for summary judgment, which the plaintiff opposed with a

cross-motion for summary judgment.[1]  The court now turns to the merits.

### III.   ANALYSIS

#### A.   Legal Standard for Summary Judgment

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c); *see also Celotex Corp v. Catrett*, 477 U.S. 317, 322 (1986); *Diamond v. Atwood*, 43 F.3d 1538, 1540 (D.C. Cir. 1995).  To determine which facts are "material," a court must look to the substantive law on which each claim rests.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A "genuine issue" is one whose resolution could establish an element of a claim or defense and, therefore, affect the outcome of the action.  *Celotex*, 477 U.S. at 322; *Anderson*, 477 U.S. at 248.

In ruling on a motion for summary judgment, the court must draw all justifiable inferences in the nonmoving party's favor and accept the nonmoving party's evidence as true.  *Anderson,* 477 U.S. at 255.  A nonmoving party, however, must establish more than "the mere existence of a scintilla of evidence" in support of its position.  *Id*. at 252.  To prevail on a motion for summary judgment, the moving party must show that the nonmoving party "fail[ed] to make

---

[1] The parties have resolved two issues without court intervention.  The parties agree that a court-issued declaratory judgment mandating record production is inappropriate before the agency first considers the applicability of exemptions to the plaintiff's request.  Def.'s Mot. for Summ. J. ("Def.'s Mot.") at 11; Pl.'s Opp'n and Cross-Mot. for Summ. J. at 10.  Also, the plaintiff concedes that the defendant's search and copying fees are reasonable.  Pl.'s Reply at 5.

a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322. By pointing to the absence of evidence proffered by the nonmoving party, a moving party may succeed on summary judgment. *Id*.

In addition, the nonmoving party may not rely solely on allegations or conclusory statements. *Greene v. Dalton*, 164 F.3d 671, 675 (D.C. Cir. 1999); *Harding v. Gray*, 9 F.3d 150, 154 (D.C. Cir. 1993). Rather, the nonmoving party must present specific facts that would enable a reasonable jury to find in its favor. *Greene*, 164 F.3d at 675. If the evidence "is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249-50 (internal citations omitted).

**B.    Legal Standard for Review of an Agency Denial of a FOIA Fee Waiver Request**

The Freedom of Information Act is the searchlight of an "an informed citizenry, vital to the functioning of a democratic society, needed to check against corruption and to hold the governors accountable to the governed." *Judicial Watch, Inc. v. Rossotti*, 326 F.3d 1309, 1309 (D.C. Cir. 2003) (internal citations omitted). Under FOIA, documents requested from a government agency "shall be furnished without any charge . . . if disclosure of the information is in the public interest because it is likely to contribute significantly to public understanding of the operations or activities of the government and is not primarily in the commercial interest of the requester." 5 U.S.C. § 552(a)(4)(A)(iii).

The requester bears the burden of establishing these two elements in the administrative record. 5 U.S.C. § 552(a)(4)(A)(iii); *Larson v. CIA*, 843 F.2d 1481, 1482-83 (D.C. Cir. 1988) (describing the provision as utilizing a "two-pronged analysis"); *Judicial Watch, Inc. v. Dep't of*

*Justice*, 365 F.3d 1108, 1126 (D.C. Cir. 2004). And the request must be formulated with "reasonable specificity . . . based on more than 'conclusory allegations.'" *Rossotti*, 326 F.3d at 1312. FOIA is to be liberally construed in favor of waivers for noncommercial requesters. *Id.*

The court reviews an agency's decision *de novo*, looking only at the administrative record available at the time of decision. 5 U.S.C. § 552(a)(4)(A)(vii); *see Nat'l Treasury Employees Union v. Griffin*, 811 F.2d 644, 648 (D.C. Cir. 1987) (declaring that a "failure to demonstrate a public interest before the agency cannot be remedied by doing so before a court").[2] The record before the agency "consists of, inter alia, the initial FOIA request, the agency's response, and any subsequent materials related to the administrative appeal." *Forest Guardians v. Dep't of the Interior*, 416 F.3d 1173, 1177 (10th Cir. 2005) (citing *Larson*, 843 F.2d at 1383).

### C. The CIA Properly Determined that the Plaintiff Is Not Entitled to a Fee Waiver

#### 1. The Administrative Record is Limited to Correspondences Between February 15, 2006 and July 18, 2006

Before addressing the merits, the court must establish the contours of the administrative record. As previously noted, the court may only peruse that evidence before the agency at the time of the final decision. *Griffin*, 811 F.2d at 648. The plaintiff asks the court to consider the September 25, 2006 letter as part of the administrative record. Pl.'s Mot. at n.1. He argues that the record before the court should include "any subsequent materials related to the administrative appeal." *Forest Guardians*, 416 F.3d at 1177. The September 25, 2006 letter, he contends,

---

[2]  This Circuit does not defer to an agency's interpretation of the FOIA fee waiver provision. *Tax Analysts v. IRS*, 117 F.3d 607, 613 (D.C. Cir. 1997) (declaring that "we will not defer to an agency's view of FOIA's meaning . . . . [because] the meaning of FOIA should be the same no matter which agency is asked to produce its records" (citations omitted)). The CIA has promulgated regulations for considering fee waivers that merely schematize and reiterate the parallel FOIA provisions. 32 C.F.R. § 1900.13.

supplements his previous letters to the agency and, because the CIA has already denied his renewed request for a fee waiver, will inevitably appear before the court as part of a new administrative record when he files another action. Pl.'s Mot. at 3.

In fact, the letter unmistakably lies outside the administrative record. It was mailed after the agency issued a final denial of appeal on July 18, 2006. Pl.'s Mot., Ex. 4 (informing the plaintiff that "[t]his [July 18, 2006 letter] is a final response to your 22 March 2006 appeal"). Correspondence and materials exchanged after the initial determination and up to the appeal decision constitute "materials related to the administrative appeal," not a letter filed two months later. The letter even followed the plaintiff's filing of his complaint, in which he makes no mention of it.

Furthermore, to include the letter in the record would excuse the plaintiff from exhausting his administrative remedies. The CIA considers his September 25, 2006 letter to be a renewed request and has issued him a new reference number. Pl.'s Mot., Ex. 6. The CIA denied the renewed request, but the plaintiff has not indicated the status or existence of an appeal of this initial determination. *Id.* The court cannot leapfrog the CIA's appellate process by speculating as to how the agency will amend its decision-making process in response to this or future court orders. *See Project on Military Procurement v. Dep't of Navy*, 710 F. Supp. 362, 366-67 (D.D.C. 1989 (holding that an agency may not refuse to exhaust administrative procedures by anticipating a legal holding). Simply put, because the agency never considered the letter, neither can the court.

Its housekeeping finished, the court now addresses the propriety of the CIA's denial.

### 2. The Plaintiff Failed to Establish that the Requested Records Are Likely to Contribute Significantly to Public Understanding of the Operations of the United States Government

To succeed on judicial review, the plaintiff must prove both (1) that his request will likely contribute significantly to public understanding of government operations and (2) that his request is not primarily in his own commercial interests. 5 U.S.C. § 552(a)(4)(A)(iii); *McClellan*, 835 Fed.2d at 1284. A claim will not rest on one leg only. Because the agency was correct in concluding that the plaintiff did not establish the first prong, the plaintiff is not entitled to a waiver of fees.[3]

In neither his initial request nor his appeal letter did the plaintiff explicate a connection between the reports he requested and U.S. government activity.[4] The plaintiff argues that his request for "all CIA documents about events in Andijan, Uzbekistan from 2004-2006, including any CIA reports relating to the violence of May 2005 and its aftermath, as well as subsequent trials and evacuations of refugees" implicitly alleged United States involvement, which "should have been self-evident to Defendant." Pl.'s Mot. at 8. Thus, the argument goes, even if no reports indicating government involvement were in the CIA's control or possession, the defendant could have enlightened the plaintiff as to this fact. Pl.'s Reply at 2.

---

[3] Because the plaintiff fails to demonstrate a nexus to government activities, the court need not reach the question of whether the plaintiff satisfied the second prong, commercial interest. Eligibility is an all-or-nothing affair. It should be noted, however, that the law here is fairly well settled. *See Campbell v. Dep't of Justice*, 164 F.3d 20, 35-36 (D.C. Cir. 1998) (holding that "[t]he fact that a bona fide scholar profits from his scholarly endeavors is insufficient to render his actions 'primarily . . . commercial'"). When the evidence is in equipoise, and a requester cannot be pigeonholed as either a public journalist or a private entrepreneur, the tie appears to go to the requester, as the courts are loath to instigate "a more or less unresolvable inquiry into the value of [a self-described] journalist['s] private goals." *Nat'l Treasury Employees Union v. Griffin*, 811 F.2d 644, 649 (D.C. Cir. 1987).

[4] He does, in vain, illuminate such a connection in his September 25, 2006 letter.

To permit the plaintiff to prevail on his claim on this argument would invert the settled burden of proof in fee waiver requests, which lies solely on the requester. When an individual submits a fee waiver request, it is incumbent upon him to clear away any inferences that could cast doubt on his eligibility. *Larson*, 843 at 1483 (holding that an "agency may infer a lack of a substantial public interest when a public interest is asserted but not identified with reasonable specificity"); *see also McClellan*, 835 F.2d at 1287 (concluding that even "a modest showing" of a public interest will not suffice, "[despite] legislative intent that courts construe [FOIA] liberally"). The requestor, not the agency, knows the contextual facts framing her request. The court will not deign to read the mind and motives of requesters. *Griffin*, 811 F.2d at 649. To do so would take it beyond the four corners of the administrative record.

But the plaintiff has one remaining arrow in his juridical quiver. A CIA-created report is an activity of the government, he avers. Disclosing such reports "will help the public better evaluate the CIA and determine if it is complying with its stated mission." Pl.'s Reply at 2. Indeed, the public "has a significant interest in knowing that the CIA is collecting information that is useful, timely, and produced in a way that ensures an effective use of resources." *Id.* at 3.

The plaintiff misses the mark. If the courts allowed individuals to strategically word fee waiver requests to characterize any agency report as government activity, then requesters could obtain all agency records without cost. *See McClellan*, 835 F.2d at 1285 (cautioning that "a wide-ranging public interest group could demand fee waiver on a request for *all* U.S. government documents, on the basis that the information might be used in litigation to ensure that agencies comply with federal law"); *but see Samuel Gruber Educ. Project v. Dep't of Justice*, 24 F. Supp. 2d 1, n.15 (D.D.C. 1998) (noting that if the requester has otherwise met his burden, an agency's

characterization of materials as routine and administrative will be of no consequence). Thus, a conclusory statement that information "will improve Government efficiency and culpability" will not support a claim. *Id.* (*quoting Griffin*, 811 F.2d at 647).

Because the plaintiff does not explain how he plans to extract meaningful information about specific practices or policies of the CIA from the reports, the court can evaluate the reports' usefulness only from their intrinsic informational content, which is limited. *See, e.g., DeCato v. Executive Office for U.S. Attorneys*, No. 00-3053, slip op. at 7 (D.D.C. Jan. 2, 2003) (emphasizing that "important[ly], plaintiff does not explain the connection between the requested records about himself" and a governmental activity); *Judicial Watch, Inc. v. Reno*, No. 00-0723, 2001 WL 1902811, at *10 (D.D.C. Mar. 30, 2001) (finding that unsolicited citizen letters to an agency would not contribute to an understanding of government); *S.A. Ludsin v. Small Bus. Admin.*, 1997 WL 337469, at *5 (S.D.N.Y. Jun. 19, 1997) (holding that disclosure of appraisals of government property do not "in any readily apparent way" contribute to the public's understanding of operations or activities of government). Such requests do not merit fee waivers.

This is not to suggest that the requestor must provide evidence confirming his allegations at the outset of his research. *Physicians Comm. for Responsible Med. v. Dep't of Health & Human Servs.*, 480 F. Supp. 2d 119, 123 n.5 (D.D.C. 2007) (explaining that to prevail the requester needed only to specify that his request sought to uncover a possible conflict of interest for an agency employee, not provide evidence establishing that conflict) (*citing Rossotti*, 326 F.3d at 1314)). But he must pinpoint the type of government activity he is investigating. *See Citizens for Responsibility and Ethics in Washington v. Dep't of Health & Human Servs.*, 481 F. Supp. 2d 99, 108 (D.D.C. 2006) (concluding that a request for documents pertaining to

contractual relationships from a particular date between HHS and public affairs firms was reasonably specific in identifying parameters of search). The court will defend a requestor's attempt to "corroborate existing suspicions," but it will not compel an agency to subsidize a fishing expedition. *See id.* at 109 (stating that recent media attention on a topic will increase such a request's informative value).

## IV.  CONCLUSION

For the foregoing reasons, the court grants the defendant's motion for summary judgment and denies the plaintiff's cross-motion for the same. An order consistent with this Memorandum Opinion is separately and contemporaneously issued this 16th day of July, 2007.

RICARDO M. URBINA  
United States District Judge